1

2

3

4

5                          UNITED STATES DISTRICT COURT

6                               DISTRICT OF NEVADA

7                                      * * *

8   VANESSA VISNOVITS, an individual,        )
                                             )
9              Plaintiff,                     )        3:14-CV-00182-LRH-VPC
                                             )
10  v.                                        )
                                             )        ORDER
11  WHITE PINE COUNTY SCHOOL                  )
    DISTRICT; DOE EMPLOYEES I through X,      )
12  inclusive; ROE BUSINESS ENTITIES I        )
    through X, inclusive,                     )
13                                            )
               Defendants.                    )
14  _____ )

15         Before the Court is Defendant White Pine County School District's ("White Pine") Motion

16  for Summary Judgment.  Doc. #32.[1]  Plaintiff Vanessa Visnovits ("Visnovits") did not file a

17  response.

18  **I.      Facts and Procedural Background**

19         Starting at a young age, Visnovits has been treated for an eye condition.  To treat this

20  condition, Visnovits was prescribed eye glasses, which she wore until middle school, when she

21  began wearing contact lenses.  Visnovits continued to wear contact lenses at school through high

22  school.  In the eighth grade, Visnovits informed White Pine Middle School about her visual

23  impairment, and the school developed an accommodation plan that included allowing her more

24  time to complete assignments and tests.

25  ///

26  _____

    [1] Refers to the Court's docket entry number.

On Wednesday, April 28, 2010, Visnovits sustained injuries when another student in her yearbook class, Kara Anderson ("Anderson")[2] approached her from behind, put one hand under her chin and the other hand on her forehead, and pulled her head straight back.  Visnovits states that this incident caused injuries to her neck, back, eyes, brain, and systems.  At the time of this incident, Visnovits was a freshman at White Pine High School in Ely, Nevada, and Anderson was a senior.  After this incident, Visnovits followed Anderson into the adjacent room and said "I hate you, Kara. My neck hurts," to which Anderson responded "oh, don't be such a baby."  Visnovits then hit Anderson's hair with her pencil and gave her a "wet willie."  Next, Anderson grabbed a camera that was hanging on Visnovits' neck and faked as if she was going to strike Visnovits, at which point Visnovits ran from the room in fear.  The yearbook teacher, Ms. Wagers ("Wagers"), was present in the room when these incidents took place.  Visnovits states that prior to the incident, Anderson routinely acted as if she was going to strike Visnovits, but Visnovits never reported these actions to a teacher or school administrator, nor did she sustain injuries prior to April 28, 2010.

Visnovits filed suit against White Pine in federal district court on April 7, 2014, alleging causes of action for (1) discrimination under Title II of the Americans with Disabilities Act ("ADA"), (2) discrimination under Section 504 of the Rehabilitation Act ("RA"), (3) negligence under a theory of *respondeat superior*, and (4) negligent hiring, training, and/or supervision.  Doc. #1.  Visnovits' attorney moved to withdraw as attorney on October 29, 2014.  Doc. #27.  Receiving no objection from Visnovits after ordering that a copy of the attorney's motion be sent to her, the Magistrate Judge granted the Motion to Withdraw on December 18, 2014.  Doc. #30.  White Pine moved for summary judgment on January 21, 2015, and Visnovits did not respond.  Doc. #32.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record

---

[2] Anderson is not a party to this lawsuit.

1   show that "there is no genuine issue as to any material fact and the movant is entitled to judgment

2   as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the

3   evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the

4   light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*

5   *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154

6   (9th Cir. 2001).  "Even where no evidence is presented in opposition to the motion, summary

7   judgment should not be granted if the evidence in support of the motion is insufficient." *Hoover v.*

8   *Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981).

9        The party moving for summary judgment bears the initial burden of informing the court of

10   the basis for its motion, along with evidence showing the absence of any genuine issue of material

11   fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the

12   burden of proof, the moving party must make a showing that no "reasonable jury could return a

13   verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On

14   an issue as to which the nonmoving party has the burden of proof, however, the moving party can

15   prevail merely by demonstrating that there is an absence of evidence to support an essential element

16   of the non-moving party's case. *Celotex*, 477 U.S. at 323.

17        To successfully rebut a motion for summary judgment, the nonmoving party must point to

18   facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson*

19   *Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000).  A "material fact" is a fact "that might affect

20   the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.  Where

21   reasonable minds could differ on the material facts at issue, summary judgment is not appropriate.

22   *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered

23   genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

24   party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of

25   the party's position is insufficient to establish a genuine dispute; there must be evidence on which a

26   jury could reasonably find for the party. *See id.* at 252.  "[S]peculative and conclusory arguments

1    do not constitute the significantly probative evidence required to create a genuine issue of material

2    fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

3    **III.    Discussion**

4    Visnovits' Complaint states four causes of action against White Pine: (1) discrimination

5    under Title II of the ADA; (2) discrimination under Section 504 of the RA; (3) negligence under a

6    theory of *respondeat superior*; and (4) negligent hiring, training, and/or supervision.

7    **A.  Disability Discrimination under Title II of the ADA and Section 504 of the RA**

8    Visnovits states that she "was harassed on account of her disability when she was assaulted

9    on April 28, 2010, and this harassment was so severe as to create an abusive educational

10   environment." Doc. #1 ¶¶14, 25.  Visnovits states further that White Pine "was aware of the

11   assault but was deliberately indifferent by doing nothing to prevent or remedy the assault."

12   *Id.* ¶¶15, 26.  Additionally, Visnovits alleges that she sustained injuries to her neck, back, eyes,

13   brain, and systems as a direct and proximate result of White Pine's failure to act, and that these

14   injuries led to more than $10,000 in damages from treatment for medical and emotional injuries.

15   *Id.* ¶¶16-17, 27-29.

16   Title II of the ADA states that no "individual with a disability shall, by reason of such

17   disability, be excluded from participation in or be denied the benefits of the services, programs, or

18   activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

19   § 12132.  Section 504(a) of the RA states that "[n]o otherwise qualified individual with a disability

20   . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the

21   benefits of, or be subjected to discrimination under any program or activity receiving Federal

22   financial assistance." 29 U.S.C. § 794(a).  Title II of the ADA and Section 504(a) of the RA are

23   often analyzed under the same legal standards because they "create the same rights and

24   obligations." *Wong v. Regents of U. Of Cal.*, 410 F.3d 1052, 1055 n.1 (9th Cir. 2004).

25   In *Davis v. Monroe County Board of Education*, the Supreme Court held in a peer-on-peer

26   sexual harassment case brought under Title IX of the Education Amendments of 1972, 20 U.S.C.

4

1  § 1681(a), that a school cannot be held liable for the actions of its students unless the plaintiff

2  shows that the school acted "with deliberate indifference to known acts of harassment in its

3  programs or activities."  526 U.S. 629, 633 (1999).  Neither the Supreme Court nor the Ninth

4  Circuit have addressed whether this analysis applies to claims by individuals under Title II of the

5  ADA or Section 504 of the RA for peer-on-peer harassment in schools.  However, the Sixth Circuit

6  Court of Appeals has noted that this approach "has been applied to disability-based peer-on-peer

7  harassment claims brought under the ADA and § 504 by the majority of federal district courts to

8  have addressed the issue."  *S.S. v. E. Ky. U.*, 532 F.3d 445, 454 (6th Cir. 2008) (citing examples).

9  The Court finds the deliberate indifference analysis from *Davis* and *S.S.* to be persuasive.  Thus,

10  White Pine can only be held liable under Title II of the ADA or Section 504 of the RA if evidence

11  indicates that the school or a representative of the school is deliberately indifferent to conduct that

12  violates the ADA or RA, "of which they have actual knowledge, that is so severe, pervasive, and

13  objectively offensive that it can be said to deprive the victims of access to the educational

14  opportunities or benefits provided by the school."  *Davis*, 526 U.S. at 650.  Courts that follow

15  *Davis* require plaintiff to satisfy a five-part test to recover for peer-on-peer harassment, to show

16  that:

17         (1) the plaintiff is an individual with a disability, (2) he or she was harassed based on
       that disability, (3) the harassment was sufficiently severe or pervasive that it altered
18         the condition of his or her education and created an abusive educational environment,
       (4) the defendant knew about the harassment, and (5) the defendant was deliberately
19         indifferent to the harassment.

20  *S.S.*, 532 F.3d at 454.

21       Visnovits can certainly satisfy the first prong (disability), and potentially the third prong

22  (altering the condition of education),[3] of this five-part test, but Visnovits' own statements preclude

23  any dispute as to whether Anderson's action was based on Visnovits' disability, whether White

24  Pine knew about any harassment against Visnovits, and whether White Pine was deliberately

25  _____

26       [3] White Pine concedes that this factor could weigh in Visnovits' favor because she "completed her last
month of school while at home, ostensibly because she was injured."  Doc. #32 at 11.

1  indifferent to any such harassment.  First, Visnovits stated that she did not know why Anderson

2  would have targeted her.  Doc. #32, Ex. 1 at 113:2-4.  When asked if Visnovits would doubt

3  Anderson if she said that she did not know about her disability, Visnovits said "No. I didn't

4  advertise it."  *Id.* at 88:15-21.  Second, Visnovits stated that although she felt bullied by Anderson

5  in the past, she did not report any incidents to a teacher, the principal, the vice principal, or the

6  school counselor.  *Id.* at 88:10-25; *id.* at 142:2-6; *id.* at 147:18-148:3.  Third, no evidence in the

7  record indicates that White Pine was deliberately indifferent.  "Deliberate indifference requires both

8  knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon

9  that likelihood."  *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).  Because there is

10  no evidence that White Pine knew about any discriminatory treatment of Visnovits based on her

11  disability, and in fact there is evidence to the contrary, Visnovits cannot establish that White Pine

12  was deliberately indifferent for a failure to act.

13       Simply put, no evidence in the record supports Visnovits' claim that White Pine knew that

14  Anderson treated her poorly, much less that any such treatment was based on her disability.  As

15  such, there are no disputed facts in the record that can preclude summary judgment on Visnovits'

16  claims under the ADA and RA.  Accordingly, the Court grants White Pine's Motion for Summary

17  Judgment on Visnovits' claims based on Title II of the ADA and Section 504 of the RA.

18       **B.  Respondeat Superior**

19       Visnovits states that White Pine "had a duty of reasonable care to ensure that the students

20  under Defendant's control were safe from harm" and that this duty was breached when the school

21  failed to protect Visnovits from Anderson's actions.  Doc. #1 ¶¶33-34.  Visnovits states further that

22  as a direct result of negligence by White Pine's agents, servants, or employees, Visnovits sustained

23  injuries to her neck, back, eyes, brain, and systems, which caused damages in excess of $10,000.

24  *Id.* ¶¶35-38.

25       To prevail on a negligence claim, the plaintiff must establish that: "(1) the defendant owed a

26  duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause

6

1   of the plaintiff's injury; and (4) the plaintiff suffered damages." *Scialabba v. Brandise Constr. Co.,*

2   *Inc.*, 921 P.2d 928, 930 (Nev. 1996).  Generally, "no duty is owed to control the dangerous conduct

3   of another or to warn others of the dangerous conduct," but Nevada recognizes that a duty of care

4   arises when "a special relationship exists between the parties or between the defendant and the

5   identifiable victim." *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280-81 (Nev. 2009).  The

6   Nevada Supreme Court has recognized that a special relationship exists between teacher and

7   student. *Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001).  "[A]n actionable claim on a theory of

8   respondeat superior requires proof that (1) the actor at issue was an employee, and (2) the action

9   complained of was within the scope of the actor's employment." *Rockwell v. Sun Harbor Budget*

10   *Suites*, 925 P.2d 1175, 1179 (Nev. 1996).

11        The Supreme Court of Nevada held in a case involving an attack of one prisoner by another

12   prisoner that "the State only has a duty to protect inmates from *foreseeable* harm." *Butler v. Bayer*,

13   168 P.3d 1055, 1064 (Nev. 2007) (emphasis added).  Although the Nevada Supreme Court has not

14   expressly adopted the foreseeability requirement in the context of peer-on-peer attacks that occur in

15   schools, the Ninth Circuit has held that a school district was not negligent for a police officer's

16   restraint and arrest of a developmentally disabled student because the incident was not foreseeable.

17   *Hayenga v. Nampa Sch. Dist. No. 131*, 123 Fed. Appx. 783, 785 (9th Cir. 2005).  Moreover, this

18   Court has held in a case based on negligent failure to warn against a school that "liability will only

19   exist where there is a special relationship between the parties, and the danger is foreseeable." *Doe*

20   *A. v. Green*, 298 F. Supp. 2d 1025, 1039 (D. Nev. 2004).  As such, the Court finds it appropriate to

21   apply the foreseeability requirement to peer-on-peer attacks that occur in schools.

22        Because Visnovits conceded that she never reported any prior instance of purported

23   harassment by Anderson to a teacher or administrator, her negligence claim can only be based on

24   the purported failure of the teacher who was present at the time of the incident—Ms. Wagers—to

25   prevent or adequately respond to Visnovits' injuries.  Visnovits stated that she did not see or hear

26   Anderson approaching before the incident because Anderson sneaked up behind her.  Doc. #32, Ex.

1 at 127:4-15.  Moreover, Visnovits stated that Wagers likely could not have prevented the incident because Anderson was "very sneaky." *Id.* at 150:3-20.  Rather, Visnovits states that Wagers did not ask how she felt after the accident despite the fact that Visnovits was "complaining loudly" about how much her neck hurt. *Id.* at 121:1-10.  However, Visnovits also stated that she did not directly report her pain and discomfort to Wagers. *Id.* at 115:2-12.  Moreover, Visnovits' actions subsequent to the incident—leaving the room to confront Anderson—would not have represented to Wagers that Visnovits had sustained significant injuries.  Thus, Visnovits' contention that Wagers should have known about her injuries amounts to mere speculation, and is not sufficient to raise a genuine dispute of material fact to support a theory of negligence based on *respondeat superior*.  *See Nolan*, 686 F.2d at 812 ("[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact.").

Visnovits has not identified any evidence to indicate that Anderson's conduct was foreseeable, that Wagers knew Visnovits sustained serious injuries after the incident, or that Wagers was deliberately indifferent to any such injuries.  Accordingly, the Court grants White Pine's Motion for Summary Judgment on Visnovits' claim of negligence based on the doctrine of *respondeat superior*.

### C. Negligent Hiring, Training, and/or Supervision

Visnovits states that White Pine breached a "duty of reasonable care in the hiring, training, and supervis[ion]" of employees "by failing to train and supervise its teacher to prevent assaults on students, and failing to train and supervise its teachers to assist students who have been assaulted." Doc. #1 ¶¶42-43.  Visnovits states that as a direct result of this negligence, she suffered injuries to her neck, back, eyes, brain, and systems, which caused damages in excess of $10,000. *Id.* ¶¶44-46.

To succeed on a claim for negligent hiring, retention, and supervision of employees, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the

8

cause of plaintiff's injuries; and (4) damages. *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).

Nevada law provides complete immunity from claims based on a state entity's exercise or

performance of a discretionary function or duty, such as hiring. NRS § 41.032(2). The Nevada

Supreme Court recently extended discretionary immunity to cover both the supervision and

retention of an employee. *See U. of Nev. Sch. of Med. v. Eighth Judicial Dist. Court of the State of*

*Nev.*, No. 61058, 2012 WL 5288007, at *1 (Nev. Oct. 23, 2012); *see Peterson v. Miranda*, No.

2:11-cv-1919, 2014 WL 4829057, at *6 (D. Nev. Sept. 29, 2014).

Visnovits has stated that she does not have any information regarding whether the school

district improperly hired Wagers. Doc. #32 at 152:14-22. Moreover, Visnovits stated that she was

not aware of any instances where Wagers knew that a student was hurt and did nothing to protect

the student. *Id.* at 154:5-10. Even if such evidence existed, White Pine would be entitled to

discretionary act immunity for its hiring and training of Wagers. *See Cloes v. City of Mesquite*, 582

Fed. Appx. 721, 727 (9th Cir. 2014) (granting summary judgment on plaintiff's claims of negligent

hiring, training, and supervision because "Nevada looks to Ninth Circuit precedent to determine the

scope of discretionary immunity and [the Ninth Circuit has] consistently held that training and

supervision are acts entitled to such immunity"). Accordingly, the Court grants White Pine's

Motion for Summary Judgment on Visnovits' claim for negligent hiring, training, and supervision.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that White Pine's Motion for Summary Judgment (Doc.

#32) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment for White Pine and

against Visnovits.

IT IS SO ORDERED.

DATED this 21st day of April, 2015.

_____

LARRY R. HICKS

UNITED STATES DISTRICT JUDGE

9